# Commonwealth v. Swartz, Appellant.

*Evidence—Handwriting—Expert testimony—Criminal law.*

On the trial of an indictment for sending a threatening letter in violation of the Act of May 19, 1913, P. L. 222, where it appears that the letter in question was printed with a pen, a witness, who has duly qualified as an expert under the Act of May 15, 1895, P. L. 69, may compare the letter in question with proven writings of the defendant in script, and express an opinion as to their points of resemblance. In such a case it is for the jury to judge as to the authorship of the disputed writing.

In such a case where the letter in question contained a drawing of a black hand, it is not error for the trial judge to refer to so-called "black hand" methods employed by certain person, especially in larger cities, to extort money by threatening letters.

A sentence of imprisonment for the minimum period of ten years and maximum period of fifteen years is not unduly severe where the prisoner has been convicted of sending a threatening letter containing a drawing of a black hand, and demanding from the prosecutor a payment of money under a threat to burn his barn if he did not pay the money demanded.

*Trial—Criminal law—Remarks of District Attorney.*

The appellate court will not reverse a conviction in a criminal case because of alleged improper remarks of the District Attorney in his speech to the jury, where the words complained of do not appear on the record.

*Criminal law—Practice, Q. S.—New trial—After discovered evidence.*

The appellate court will not reverse a conviction in a criminal case because the trial court refused a new trial where the defendant alleged after discovered evidence, and the judge in refusing the application states that there was no allegation that the evidence had

Syllabus—Charge of Court below. [65 Pa. Superior Ct.
not been available at the time of the trial. Such matter is within
the sound discretion of the trial judge.

Argued Oct. 3, 1916.    Appeal, No. 178, Oct. T., 1916,
by defendant, from judgment of Q. S. Centre Co., Sept.
T., 1915, No. 11, on verdict of guilty in case of Com-
monwealth v. B. P. Swartz.    Before ORLADY, P. J., POR-
TER, HENDERSON, HEAD, KEPHART, TREXLER and WIL-
LIAMS, JJ.    Affirmed.

Indictment for sending a threatening letter.    Before
QUIGLEY, P. J.

The letter was in the following form:

"Pay Frank Columbine $20 for his wages and give him
$5 back on that wach, also pay his store bill at Kline
and Wolfe.    Keep your mouth shut you crooked ——
——.    You have three days to do it, or up goes your
barn.

"Mum is the word."

It was printed with a pen, and below the writing was
the drawing of a black hand.

At the trial G. G. Zeth was called as an expert witness
for the Commonwealth, and after having duly qualified
explained to the jury points of resemblance which he
found between the letter in question and certain proven
writings of the defendant in script.    Objection to his
testimony was overruled.

The court charged in part as follows:

B. Paul Swartz, the defendant, stands indicted before
you and is now on trial charged with the crime of extor-
tion by threats.

The prosecutor, W. H. Thompson, is a resident of the
Borough of Howard and the owner, among other things,
of a livery stable.    He has testified that on or about the
30th of January, 1914, on the evening of that day, he
found posted on his barn a threatening letter, unsigned,
which has been identified as Com's. Ex. No. 1, and which
you will have with you in the jury room.

159, (1916).]        Charge of Court below.

[This letter contains threats, and there is a black hand inscribed upon it, and what is supposed to designate a torch; and we say to you as a matter of law, gentlemen of the jury, that the writer of this letter, or any person who is responsible for its composition, or its publication, or posting, is guilty of a very serious crime.   It is what has become known as a black hand letter or poisoned pen letter, and in all parts of the country, the sending or posting of letters of this kind is looked upon as a very serious crime against the public.

In large cities, particularly in New York and Philadelphia, societies have been formed and through and by them letters are delivered or sent to certain citizens, sometimes demanding money, and sometimes demanding other things, even threatening the lives or the destruction of the property of our citizens if they fail to comply with the demands set forth in them.

In this particular instance the letter in question threatens that unless certain sums of money are paid by Mr. Thompson his barn will be destroyed by fire.

So I say to you that the person or persons who wrote this letter, or contributed to its writing or publication, are guilty of the crime set forth in this indictment.]
(3)

The question for you to determine, gentlemen of the jury, is whether or not the defendant either wrote the letter, Com's. Ex. No. 1, or caused its publication, or posting, or had anything to do with it, and you are the sole judges of the facts in that connection.

The defendant comes into court with the presumption of innocence in his favor.   Every man charged with crime is presumed to be innocent until proven guilty, and it is the duty of the Commonwealth, before a defendant can be convicted, to prove beyond a reasonable doubt that he is guilty.   The burden is upon the Commonwealth in this case to convince you, beyond a reasonable doubt, that the defendant is guilty of this crime.

The testimony is not very voluminous or complicated.

There is no dispute about the fact that Mr. Thompson found this letter posted on his barn.   Of course there is a dispute as to whether or not Mr. Swartz had anything to do with the preparation or posting of it.

The Commonwealth has called witnesses to identify the handwriting of Mr. Swartz, and there have been offered in evidence here specimens of his handwriting which are not disputed.   I do not recall the numbers of the exhibits, but certain exhibits offered here in evidence by the Commonwealth are the undisputed writing of Mr. Swartz.

[The Commonwealth later called Mr. Zeth, who qualified as an expert in handwriting.   In other words, the court, after preliminary examinations, permitted him to testify as an expert, as one who had sufficient experience in testing handwriting to be known in courts of law as an expert.

Mr. Zeth, after examining the undisputed writings of Mr. Swartz, and also examining this letter designated as Com.'s Ex. No. 1, testified that the similarity was sufficient to convince him morally that the same person who had written the undisputed writings also wrote this paper found posted on Mr. Thompson's barn.

If you believe Mr. Zeth's testimony, and believe that he was sufficiently qualified to give an opinion of this kind, this would be a very strong piece of evidence against the defendant.   Mr. Zeth testified he did not know of any expert who would be willing to say positively, by comparison, that the writings were the same, and that as far as he had ever gone, and as far as he knew of any other expert having gone, was to testify they were morally sure they were the same.

I call this to your attention specially, because the court views this as rather an important piece of testimony in this case.]   (4)

The Commonwealth also called Robert P. Confer, who testified he had overheard a conversation between the defendant and Mr. Riddle, at the Pennsylvania Railroad

station on the 3d of last September, in which the defendant stated that if he could only get rid of Columbine he would be all right.

The Commonwealth contends that in view of the fact this letter refers to an indebtedness which Columbine owed Mr. Swartz that this conversation necessarily had reference to this transaction, but that is a question of fact for you.

Mr. Thompson also testifies, and I do not recall that he is contradicted, that some time in October, 1913, preceding the posting of this letter, Mr. Swartz had told him that Columbine owed him a note of twenty-five dollars, and that if he would give him twenty dollars he would give him the note.

Verdict of guilty upon which the defendant was sentenced to undergo imprisonment for a minimum period of ten years, and a maximum period of fifteen years.

*Errors assigned* were (2) ruling on evidence as above quoting the bill of exceptions; (3, 4) portions of charge as above quoting them; (5) refusal to withdraw a juror and continue the case, because of alleged improper remarks of the district attorney; (7) in discharging rule for new trial; (8) in imposing an unduly severe sentence.

*S. D. Gettig,* with him *W. G. Runkle,* for appellants.—Evidence by comparison of handwriting is not allowed as independent proof, and the comparison must be made by the jury, not by experts: Berryhill v. Kirchner, 96 Pa. 489; Aumick v. Mitchell, 82 Pa. 211, 213; Berkley v. Maurer, 41 Pa. Superior Ct. 171; Groff v. Groff, 209 Pa. 603.

*J. C. Furst,* District Attorney, with him *N. B. Spangler,* for appellee.

OPINION BY TREXLER, J., December 18, 1916:

The defendant was charged under the Act of May 19, 1913, P. L. 222, with sending a threatening letter. There are many assignments of error but they may be considered under the same divisions as are contained in appellant's argument.

First. At the trial a witness was called, who after qualifying as an expert under the Act of May 15, 1895, P. L. 69, was permitted to testify as to certain resemblances between writings shown to have been made by the defendant and the unsigned letter which contained threats and formed the basis of the charge. This witness stated the principles upon which he based his work and the reasoning by which he arrived at his opinion. He testified that he was certain that defendant was the writer of the threatening letter but declined to positively aver that he was. He said that no one could be positive unless he was present and actually saw the person do it. The points of resemblance between the writing were not many. The threatening letter was printed with a pen. The proven writings were in script. The defendant earnestly contends that the testimony of the expert was so weak that it had no probative value and that the court was wrong in allowing the papers used for the purpose of comparison and the threatening letter to be submitted to the jury. We cannot lay down any fixed standard as to how many points of resemblance an expert must show in writing submitted to him before his testimony may be considered and the papers allowed to go to the jury. After he has properly qualified and has made the comparisons it is for the jury to judge as to the authorship of the disputed writing. Under the Act of 1895 final determination of the matter is for them. The letter containing the threats was printed with a pen but nevertheless comes under the designation of "writing." Printing with the pen and script are but different forms of writing and these two forms of chirography alleged to have been employed by the same person on different occasions

may afford a basis of comparison that may lead to the conclusion of common authorship.

Second. The court in its charge referred to so-called "black hand" methods employed by certain persons, especially in larger cities, to extort money by threatening letters. The allusion was unnecessary but did not constitute error. The threatening letter in question contained a drawing of a black hand and the remarks of the court were merely in explanation of the significance of the drawing. What the court said did not harm the defendant. It was only telling the jury what was no doubt known to most of them that one of the symbols employed in certain forms of extortion was a black hand. It certainly had no bearing on the guilt or innocence of the defendant.

Third. The district attorney in his speech to the jury made some allusion to another case which had been tried some years before in the same county. The defendant's counsel moved to withdraw a juror. This the court declined to do. Whether properly or not we cannot determine. We have in the paper book a reference to the subject of the remarks, but what words were employed does not appear on the record. Counsel when he made the motion should have taken means to have the remarks made part of the record: Com. v. Shoemaker, 240 Pa. 255.

Fourth. The defendant asked the trial judge to grant a new trial alleging that he had discovered new evidence which if produced on the retrial would change the result. The judge in refusing the motion stated that there was no allegation that the evidence had not been available at the time of the trial and that it was too late to take advantage of this under the circumstances. This matter was within the sound discretion of the trial judge.

The fifth assignment is that the charge of the court was unfair to the defendant. We have carefully read the charge and have come to the conclusion that there is no merit in this contention.

Sixth. The complaint as to the severity of the sentence is without merit. The sentence imposed was within the terms of the act under which the defendant was found guilty.

The judgment is affirmed and it is ordered that the defendant appellant appear in the court below at such time as he may be called and that he be by that court committed until he has complied with the sentence or any part of it that had not been performed at the time this appeal became a supersedeas.